UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DESSIE CHERRY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-2244 |
| | § | |
| CCA, PROPERTIES OF AMERICA, LLC, | § | |
| *d/b/a/* CORRECTION CORPORATION OF | § | |
| AMERICA | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Correction Corporation of America's ("CCA") motion for summary judgment. Dkt. 28. After review of the motion, the various responses, and the applicable law, the motion is GRANTED.

## BACKGROUND

Defendant CCA is a private correctional service company that contracts with federal, state, and local governmental agencies to provide correctional services. Dkt. 20 at 5. Plaintiff Dessie Cherry is a fifty-nine year old, African American female who was employed by CCA as a Warden from November 16, 2003 to February 9, 2007. Dkt. 1 at 3. In April 2004, Cherry became Warden at the Houston Processing Center ("HPC"), a federal detention center operated on behalf of US Immigration and Customs Enforcement ("ICE"). Dkt. 1 at 4. During Cherry's tenure at HPC, CCA received two "at risk" audit evaluations, which are the lowest ratings possible. Dkt. 20 at 6. As a result of this poor performance, ICE issued CCA two substantial fines. *Id.* In an effort to improve relations with ICE, CCA decided it would be best to transfer Cherry to another location. *Id.* Thus, on November 5, 2005, Cherry was told that she was being involuntarily transferred to the Liberty

County Jail ("LCJ") as its Warden because ICE was unhappy with her performance at HPC. Dkt. 1 at 4.

While at the LCJ, Cherry felt that she was singled out and discriminated against by CCA's Managing Director, Charles Martin. *Id.* at 5. As an example of the discrimination, Cherry cites the fact that on August 10, 2006, she received a letter from Martin in which he outlined several concerns he had regarding operational issues at the LCJ. *Id.* at 6. Consequently, he asked Cherry to start submitting daily status reports to him; something no other Warden had to do. *Id.* In February 2006, Cherry filed an internal complaint of mistreatment against Martin. Dkt. 20 at 6. CCA conducted an internal investigation, but determined that Cherry's claims were not substantiated. *Id.*

The LCJ operated on a two-year contract, and at the end of 2006 the contract was up for rebid. Dkt. 20 at 7. The LCJ contract, however, was ultimately awarded to a competitor and not to CCA. *Id.* As a result, Cherry was informed that she needed to apply for other Warden and Assistant Warden positions within the company to keep her job. *Id.* at 6. Cherry contends that she applied for several of these positions, even though some of them were out of state and she desired to remain in Texas. Dkt. 27 at 6–9. Cherry was, however, ultimately terminated by CCA on February 9, 2007, after failing to find another position. *Id.* at 11.

Cherry filed an EEOC complaint and received a right-to-sue letter. She then filed this suit against CCA alleging that the company subjected her to a hostile work environment and wrongfully terminated her because of her race, gender, age, and for engaging in protected activity. Dkt.1 at 1. CCA now moves for summary judgment on all claims. Dkt. 20.

## ANALYSIS

### I.   Legal Standards

#### A.  Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id*. "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66

3

F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

  **B.** **Race, Sex, and Age Discrimination Standards**

Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for an employer to discharge an employee because of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Likewise, the Age Discrimination in Employment Act of 1967 ("ADEA") promotes

employment of older persons (over forty years of age) based on their ability rather than age and prohibits arbitrary age discrimination in employment. 29 U.S.C. § 621(b).

A plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Urbano v. Continental Airlines Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993)). When a plaintiff offers only circumstantial evidence, the *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case of discrimination, which, if established, raises a presumption of discrimination. *See Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179–80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817 (1973)). To establish a prima facie case, the plaintiff must show that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated" or the plaintiff was replaced by a non-minority. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (quoting *Rutherford*, 197 F.3d at 184); *Jatoi v. Hurst-Eules-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987). The Fifth Circuit has held that only "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating, satisfy the "adverse employment action" element of a *prima facie* case of discrimination. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001). The plaintiff must raise a genuine issue of material fact as to all four elements of her prima facie case of discrimination. *Id.*

If the plaintiff successfully establishes a prima facie case of discrimination, the employer must then produce a legitimate nondiscriminatory reason for the adverse employment decision. *Id.* Once the employer produces a legitimate nondiscriminatory reason, the presumption of

discrimination dissipates and the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that the nondiscriminatory reason is merely pretextual. *Id.*

To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). A plaintiff may establish pretext by showing either (1) the reason offered by the employer is untrue, or (2) the reason is true, but the plaintiff's protected characteristic was a motivating factor in the adverse decision (the "mixed-motives" alternative). *Id.*; *Keelan v. Majestco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). The plaintiff bears the ultimate burden of persuading the trier of fact, by a preponderance of the evidence, that the employer intentionally discriminated against her because of her protected status. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219–20 (5th Cir. 2001).

### C. Hostile Work Environment Standard

The United States Supreme Court noted in *Harris v. Forklife Systems, Inc.* that "when discriminatory conduct [is] so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin," the broad notions of Title VII are offended. 510 U.S. 17, 22, 114 S. Ct. 367 (1993). Evidence of a hostile work environment may include "the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 333 (5th Cir. 1994) (quoting *Harris*, 510 U.S. at 23).

### D. Retaliation Standard

Title VII's antiretaliation provision protects an employee who is discriminated against because she has "'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted,

or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S. Ct. 2405 (2006) (quoting 42 U.S.C. § 2000e-3(a)). Similarly, the ADEA "prohibits an employer from discriminating against an employee 'because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA].'" *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 374 (5th Cir. 2008) (quoting 29 U.S.C. § 623(d)). To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) a casual link existed between the protected activity and the adverse employment action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 1997). At a minimum, "in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) (citing *Medine v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).

**II. Application**

CCA moves for summary judgment on all of Cherry's claims. First, CCA argues that many of Cherry's factual allegations are time-barred. Dkt. 20 at 11. Second, Cherry's claim of race, gender, and age discrimination are not viable because she has no evidence to establish she was treated less favorably than similarly situated employees who were not members of Cherry's protected class. *Id.* at 14–15. Additionally, Cherry cannot overcome CCA's nondiscriminatory reason for terminating or failing to rehire her. *Id.* at 15–16. Third, Cherry has failed to show she was subject to a hostile work environment. *Id.* at 12. And last, Cherry has no viable retaliation claim. *Id.* at 19.

### A. Time-Bar

CCA argues that Cherry's factual allegations prior to September 27, 2006, are time-barred and cannot be considered by the court. Dkt. 20 at 11. In states such as Texas that provide an administrative mechanism to address employment discrimination complaints, a plaintiff must file a charge of discrimination within three hundred days after learning of the conduct alleged. 42 U.S.C. § 2000e-5(e)(1); *Huckaby v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998). Cherry filed her charge of discrimination with the EEOC on July 24, 2007. Dkt. 20 at 9. Therefore, CCA argues that all factual allegations prior to September 27, 2006—three hundred days prior—are inappropriate for judicial review. *Id.* Cherry, however, alleges that she filled out the EEOC questionnaire on December 28, 2006, and mailed the letter on December 30, 2006. Dkt. 27 at 32. Three hundred days prior to December 30, 2006, is March 5, 2006. Therefore, factual allegations that occurred prior to March 5, 2006, are time-barred. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 622 n.1, 127 S. Ct. 2162 (2007) (assuming date of filing the EEOC questionnaire, rather than the formal charge, is the appropriate date)

### B. Race, Sex, and Age Discrimination Claims

CCA argues that Cherry's claims of race, gender, and age discrimination fail because she has produced no evidence to show that similarly situated employees who were not members of Cherry's protected class were treated differently. Dkt. 14. In response, Cherry argues that she has in fact identified similarly situated employees who were treated differently and points to Robert Lacy, an African American male who also worked as a Warden for CCA. Dkt. 27. Cherry avers that Lacy was treated differently because he was not terminated after two inmates escaped while he was Warden of the LCJ. Dkt. 27, Ex. 7. Additionally, Lacy apparently received "secret" personnel

8

assistance in filling out applications for a new Warden position when he was leaving the LCJ. Dkt. 27, Ex. 11. Cherry, however, identified no other similarly situated persons.

CCA further argues that even if the court finds that Cherry has met her prima facie case by showing that Lacy is a similarly situated person who was treated differently,[1] Cherry has failed to overcome CCA's non-discriminatory reason for her termination: Cherry was terminated because the contract at the LCJ was not renewed. Dkt. 20 at 15. The court agrees. Cherry has offered no evidence to show that CCA purposely lost the contract in order to remove Cherry as Warden, nor any evidence to show that Cherry would have been terminated even if the LCJ contract had been renewed. Cherry's termination because of the loss of the LCJ contract is analogous to a reduction-in-force termination and courts have held this is a legitimate, nondiscriminatory reason for termination. *See, e.g.*, *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 357 (5th Cir. 2007); *Robertson v. Alltell Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004).

In the alternative, Cherry argues that she suffered an adverse employment action because she was required to submit applications for Warden and Assistant Warden positions after the LCJ contract was lost, even though she had not been required to submit such applications in the past, and because she was denied those positions to which she applied—in essence, failure to hire. Dkt.27 at 31. CCA, however, argues that Cherry cannot show a prima facie case for failing to be hired, nor show that CCA's legitimate reason for not hiring her is pretextual because she has not shown she is clearly better qualified for the position than the person outside of the protected class. Dkt. 20 at 18–19.

---

[1]Lacy's age is not apparent from the briefing. And, as another African American, he does not qualify as someone outside of Cherry's race.

Cherry applied for three positions with CCA: (1) a Warden position in Cal City, California or Appleton, Minnesota; (2) a Senior Director Facilities Management position; and (3) any open Warden position in Texas. Dkt. 20 at 16. To the extent Cherry indicated an interest in any other positions, she did not actually apply for those positions. *Id.* CCA avers that after submitting her application for the Warden position in California or Minnesota, Cherry told the Vice President of Operations Steve Conry that she would not transfer out of state. Dkt. 20 at 17. Therefore, CCA did not consider her application for the Warden position. *Id.* CCA did not hire Cherry for the Facilities Management position because she was not qualified for the position, having not met the minimum qualifications of seven years of real estate and facilities management. *Id.* at 18. And, Cherry was not hired for the open position at T. Don Hutto in Texas because she is not bilingual, which was a requirement for the position. Dkt. 20 at 18. To show that these proffered explanations are pretext, Cherry argues that Conry falsely testified at his deposition that she told him she would not transfer out of Texas. Dkt. 27 at 31. Additionally, Cherry argues, prior Wardens at T. Don Hutto had not been bilingual, and many CCA facilities have bilingual prison populations, but the Wardens are not required to be bilingual. *Id.* at 12.

Even assuming that Cherry has met her prima facie case for failure to hire, Cherry has not created a genuine issue of material fact that CCA's reasons are pretextual. Although she alleges that Conry lied when he stated that she told him she would not move out of state, Cherry admits she did not tell Conry she would relocate. Dkt. 20, Ex. A at 153. Moreover, Cherry acknowledges that if she had been willing to take an Assistant Warden position she would have continued her employment with CCA. Dkt. 20, Ex. A at 267. Additionally, although Cherry contends that the T. Don Hutto Warden position should not have required a bilingual Warden, this does not show that CCA lied about this requirement. Lastly, Cherry does not present any evidence to show that she is

10

"clearly better" qualified than the employees who obtained these positions. *See Price v. Fed. Ex. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). Therefore, summary judgment is granted as to Cherry's claims of discrimination based on race, gender, and age.

### C. Hostile Work Environment

Cherry contends that CCA subjected her to a hostile work environment because: (1) she was required to submit applications for Warden positions when she had not been required to do so in the past; (2) she did not receive assistance in filling out the Warden applications, but Lacy was given such assistance; (3) she was not given annual appraisals in 2005 and 2006 as required by company policy; and (4) she was required to submit daily status reports to Martin. None of these incidents, however, appears to be discriminatory, let alone severe or pervasive enough to create an objectively hostile or abusive work environment. Further, Cherry has not shown that she complained to CCA about any of these incidents and that CCA failed to take prompt remedial action. For these reasons, summary judgment is granted on the hostile work environment claim.

### D. Retaliation

CCA also moves for summary judgment on the retaliation claim because Cherry has failed to establish a causal connection between Cherry's protected activity and her termination. Dkt. 20 at 19. Cherry engaged in two protected activities: (1) she filed ain internal complaint alleging mistreatment on February 26, 2006; and (2) she mailed her EEOC questionnaire on December 30, 2006. CCA argues that eleventh months passed between the complaint and the termination; thus the temporal proximity is too remote to establish a causal connection. *Id.* at 19. Additionally, Cherry offered no evidence to show that CCA knew that Cherry had mailed the EEOC complaint on December 30, 2006, so there can be no causal connection between the EEOC complaint and the firing. Dkt. 28 at 7. Furthermore, even if Cherry has established a prima facie case of retaliation,

11

she cannot overcome the legitimate, nondiscriminatory reason for her termination—the loss of the LCJ contract.

In her response, Cherry contends that CCA's retaliation against Cherry commenced when she filed the internal complaint and ended when she was terminated. Dkt. 31 at 7. However, even if this is sufficient to establish a prima facie case of retaliation, Cherry has failed to show that CCA's offered explanation is a pretext. Therefore, summary judgment is granted with respect to the retaliation claim.

## CONCLUSION

For the reasons stated above, CCA's motion for summary judgement is granted with respect to all claims.

It is so ORDERED.

Signed at Houston, Texas on August 24, 2010.

_____
Gray H. Miller
United States District Judge